**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GEORGY KHUTYAEV,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:25-cv-3393-MDH** |
| | ) | |
| **SHERIFF JIM C. ARNOTT,** *et. al.*, | ) | |
| | ) | |
| **Respondents.** | ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") and parole has been terminated without prior written notice. Pending is his Verified Petition for Writ of Habeas Corpus in which he argues federal statutes and the Due Process Clause require that he be released or granted a hearing. The Court agrees with Petitioner's statutory arguments, and on that basis, it concludes the Petition for Writ of Habeas Corpus should be **GRANTED**.

## BACKGROUND

Mr. Khutyaev is a pending applicant for asylum pursuant to 8 U.S.C. § 1158 and is a citizen and national of Russia. Mr. Khutyaev fled Russia in fear for his life and safety. From there, he made his way to the United States, transiting through several countries, including Turkey and Mexico. On, October 18, 2022, he presented himself at San Ysidro, California, port of entry to seek asylum and related protections from persecution and torture in the United States. That same day, Respondents determined that Mr. Khutyaev was "inadmissible to the United States pursuant to section 212(a)(7)(A)(i)(I) of the INA, as amended." (Doc. 1-5 at 5). Mr. Khutyaev was served with an I-862, Notice to Appear, and paroled into the United States without detention pending, 240 (Removal Proceedings) hearing before the Immigration Judge. CBP issued Mr. Khutyaev Form I-

1

94 under category "DT", which is an abbreviation used to identify parole pursuant to INA § 212(d)(5). His I-94 was issued from October 18, 2022, until October 17, 2023. (Doc. 1-4). Respondent DHS paroled Mr. Khutyaev at the border into the United States under 8 U.S.C. § 212(d)(5).

Following his parole on October 18, 2022, Mr. Khutyaev timely filed his I-589 Application for asylum, withholding of removal, and Convention Against Torture Protection with the Chicago Immigration Court. The Chicago Immigration Court scheduled him for a hearing in his case on December 22, 2025, at 10:30 am. Mr. Khutyaev also timely filed for his employment authorization, which was approved and remains valid until September 23, 2029. Mr. Khutyaev obtained work pursuant to his valid employment authorization as an Uber driver.

On October 31, 2025, Mr. Khutyaev was working as an Uber driver and was lawfully present in a designated Uber driver parking lot at O'Hare International Airport in Chicago. Mr. Khutyaev was on active duty within the Uber app and waiting for a passenger request. After receiving a request, he began driving toward the airport terminal. After Mr. Khutyaev attempted to exit the parking lot, he observed ICE officers blocking both the entrance and exit, stopping every vehicle attempting to leave. Petitioner was among the first vehicles approached. The first question posed by ICE officers was, "Are you a U.S. citizen?" Officers did not ask Mr. Khutyaev for his name or otherwise identify him prior to questioning. Mr. Khutyaev responded truthfully that he was not a U.S. citizen, and immediately informed officers that he possessed a valid employment authorization, a Social Security number, and a driver's license. Petitioner presented his unexpired Employment Authorization Document (EAD) to the officers. Officers asked whether he had any additional documentation. Petitioner replied by asking what else was needed and informed officers that he had a pending immigration court hearing, no violations, and no criminal history. At the time

of his warrantless arrest, Petitioner had a pending immigration court hearing scheduled for December 22, 2025, in Chicago Immigration Court.

Despite this information and documentation, officers ordered Mr. Khutyaev to exit the vehicle. Immediately upon exiting the vehicle, Petitioner was handcuffed and arrested. Mr. Khutyaev was taken into ICE custody and initially transported to a Chicago immigration holding facility, where he was confined in rooms holding approximately 40–50 detainees per room. Mr. Khutyaev remained there for three days. Despite repeated requests, Mr. Khutyaev was not permitted to make a phone call until his second day in custody. On the third day, Mr. Khutyaev was transferred to Greene County Jail in Springfield, Missouri, where he remains detained to date.

Prior to Mr. Khutyaev's detention, ICE did not provide written notice of the revocation of his parole. In addition, before Mr. Khutyaev's detention, he never received a hearing before a neutral decision-maker to determine if his re-detention was justified.

Petitioner brought this proceeding, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, against (1) the acting field office director for ICE Chicago, (2) DHS, (3) the Secretary of DHS, and (4) the Greene County Sheriff, all in their official capacities.[1] He asserts his detention violates the Castanon-Nava Settlement Agreement, ICE's own regulations, and the Due Process Clause. Respondents argue that Petitioner is not entitled to be considered for release, and the Court resolves the parties' arguments below.

## **DISCUSSION**

---

[1] Petitioner's Petition lists Sheriff Arnott as a party by virtue of his administration of the Greene County Jail where Petitioner is currently detained. While Sheriff Arnott was not served in this case as of the date of this Order, the Court construes the proper party holding Petitioner in custody as the Department of Homeland Security through Immigration and Customs Enforcement. As DHS and ICE are utilizing the Greene County Jail to hold Petitioner and other detainees, the Court expects its ruling to apply to the Government and those aiding the Government regarding this specific case.

## I.    Jurisdiction

Respondents argue that three statutory provisions—8 U.S.C. §§ 1252(e)(3), 1252(g) and (b)(9) deprive this Court of jurisdiction to consider Petitioner's claims. The Court disagrees.

Section 1252(e)(3), entitled "Challenges on validity of the system," limits the scope of judicial review of "orders under Section 1225(b)(1)" and limits venue to the U.S. District Court for the District of Columbia. Petitioner is "not challenging the lawfulness of any particular statute, regulation, or written policy or procedure." Thus, § 1252(e)(3) does not strip this Court of jurisdiction. *See Munoz Materano v. Arteta*, 2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025), at *10. Further, this statute only bars jurisdiction based on those held under 8 U.S.C. § 1225. However, the Court adopts its ruling in similar cases[2] and finds that Petitioner is being held under 8 U.S.C. § 1226. Therefore, 8 U.S.C. § 1252(e)(3) does not deprive the Court of Jurisdiction.

Sections 1252(g) and (b)(9) apply narrowly to systemic challenges to regulations implementing expedited removal, review of an order of removal, the decision to seek removal, or the process by which removability will be determined, not to constitutional or statutory claims which precede and are collateral to that process, including, as relevant here, unlawful arrest or detention. *See Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 U.S. Dist. LEXIS 135986, 2025 WL 1953796, at *7 (W.D.N.Y. July 16, 2025); see also *Hernandez-Cuevas v. Olson*, No. 4:25-cv-00830-BP, at 3 (W.D. Mo. Nov. 05, 2025) (citing 8 U.S.C. § 1252(b)(2)); *Cifuentes Rivera v. Arnott, et al*, 25-cv-00570-RK1, Doc.19 at 7 (W.D. Mo. Oct. 07, 2025) ("the narrow scope of § 1252(g) does not cover "claims [that] are collateral to the Government's decision to execute the

---

[2] *Andres v. Noem*, et al., No. 25-03321-CV-S-MDH, *Eshdavlatov v. Olson*, et al. No. 25-00844-CV-S-MDH, *Hernandez-Cuevas v. Olson*, et al., No. 25-00830-CV-W-BP, *Ifante v. Noem*, et al., No. 25-03322-CV-S-MDH, *Mairena-Munguia v. Arnott*, et al., No. 25-03318-CV-S-MDH, *Morales-Rodriguez v. Arnott*, et al., No. 25-00836-CV-S-MDH, *Pozos-Ramirez v. Noem*, et al., No. 25-03316-CV- S-MDH.

final order of removal," for instance, claims seeking relief based upon the Government's alleged failure to comply with its own regulations regarding the required administrative processes after an alien is detained."). Petitioner is challenging his unlawful detention, not any removal decisions or actions, so the above provisions do not deprive the Court of jurisdiction.

Respondents rely on *Tazu v. AG United States*, 975 F.3d 292 (3d Cir. 2020), for the proposition that § 1252(g) strips the court of jurisdiction of any "decision or action…to execute [a] removal order." (Doc. 5 at 5). The Court agrees with Petitioner that in *Tazu*, the plaintiff brought a petition for habeas relief directly challenging the timing of the execution of a removal order. *See Tazu* at 297 ("Though the Attorney General admittedly has discretion to execute his removal order later, Tazu claims, he allegedly lacks the authority to exercise that discretion now."). Moreover, Mr. Tazu was re-detained because his removal was imminent and he sought a stay of that removal from the court to complete his immigration process. This, the *Tazu* Court determined, was barred under § 1252(g). The Court agrees with Petitioner that *Tazu* is unpersuasive under the facts of this case.

For those reasons, this Court concludes it has jurisdiction over Petitioner's habeas petition.

II.     **The Due Process Clause and ICE Regulations**

ICE Regulations

Petitioner alleges his detention by ICE violates ICE's own regulations. Petitioner argues, and the Court agrees, that he is not subject to the automatic grounds of termination of parole because he has not departed from the US, and his parole has not expired. Nonetheless, Petitioner was arrested without a warrant and detained. Before re-detaining him, Respondents did not provide Petitioner with any written notice explaining the basis for the revocation of his release.

5

Respondents also did not provide a hearing before a neutral decisionmaker where ICE was required to justify the basis for re-detention or explain why Petitioner is a flight risk or danger to the community.

Federal regulations govern the termination of parole and state that the only basis for an automatic termination of parole without written notice is based upon a departure from the United States, where "the expiration of the time for which parole was authorized," 8 C.F.R. § 212.5(e)(1). In all other instances, written notice is specifically required. 8 C.F.R. § 212.5(e)(2).

By failing to provide written notice of revocation of parole and a hearing to justify the basis for re-detention or explain why Petitioner is a flight risk or danger to the community, Respondents have violated 8 C.F.R. § 212.5(e) and Petitioner's constitutional right to due process (analysis below).

<u>Due Process</u>

"A procedural due process claim has two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Sanchez v. LaRose*, 2025 U.S. Dist. LEXIS 190593, *6-7 (citing *Miranda v. City of Casa Grande*, 15 F4th 1219, 1225 (9th Cir. 2021) (internal quotations and citation omitted)).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Sanchez v. LaRose* at *7 (citing *Zadvydas v. Davis*, 533 U.S. at 690). Although immigration detention is administrative, it is still subject to due process clause review. *Id.* (citing *Hernandez v. Sessions*, 872 F3d at 981 ("the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process.")). When the government grants an alien parole into the country,

6

it creates a liberty interest intimately tied to freedom from imprisonment. *Id*. (citing *Alegria Palma v. LaRose*, 25-cv-1942, ECF No.14 (S.D. Cal. Aug. 11, 2025) (finding that "continued freedom after release on own recognizance" was a core liberty interest)). Here, Petitioner was deprived of his liberty interest in his prior parole status when Respondents revoked that parole and placed him in detention.

Respondents also denied petitioner due process in the revocation of his parole. "The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it." *Sanchez* at *8 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72, 71 S. Ct. 624, 95 L. Ed. 817 (Frankfurter, J., concurring)). In the immigration context, "the Constitution requires the government to afford notice of any action against an alien [and] requires an opportunity for the alien to be heard. [] The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner." *Id*. (citing *Ying Fong v. Ashcroft*, 317 F.Supp.2d 398, 403 (S.D.N.Y. 2004) (internal quotations and citations omitted)).

An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the government comports with its own internal standards regarding parole revocation. DHS has the authority to revoke an alien's parole "at any time" on a discretionary, but not unlimited, basis. *Id*. at *8. (citing 8 U.S.C. § 1226(b); *Mohammed H. v. Trump*, No. 25-1576 (JWB/DTS), 2025 U.S. Dist. LEXIS 117197, 2025 WL 1692739, at *5 (D. Minn. June 17, 2025) ("The Government has wide—but not unlimited—discretion in the immigration realm.")). The Board of Immigration Appeals ("BIA") has held that DHS may change the conditions of an alien's parole only when there is a sufficient change of circumstances to justify that change. *Id*. (citing *Matter of Sugay*, 17 I. &

N. Dec. 637, 640 (BIA 1981) (as cited in *Alegria Palma*, No. 25-cv-1942-BJC-MMP, ECF No.14 at 3)). "In practice, the DHS re-arrests individuals only after a 'material' change in circumstances." *Id*. at \*9. (citing *Ortega v. Bonnar*, 415 F.Supp.3d 963, 968 (N.D. Cal. 2019)). To satisfy due process, those changed circumstances must represent individualized legal justification for detention. *Id*. at \*9 (citing *Mohammed H.*, 2025 U.S. Dist. LEXIS 117197, 2025 WL 1692739 at \*5 (granting a writ of habeas corpus on due process grounds due to a lack of individualized legal justification for changing the petitioner's status)).

Here, Respondents revoked Petitioner's parole without a showing of change in circumstances related to his case. Respondents do not dispute the facts as Petitioner presents them. They only argue this Court lacks jurisdiction. In their briefing, Respondents do not state a "sufficient change in circumstances" to justify revoking Petitioner's parole, or any individualized justification at all. *Id*. at \*9 (citing *Matter of Sugay*, 17 I. & N. Dec. at 640). Petitioner's parole into the U.S. was based on his asylum claim, the underlying facts of which have not changed, and he was in possession of a still-valid work authorization (Doc. 1-3) and awaiting further immigration proceedings. There was no evidence from his conduct that he was a flight risk. He was simply performing his duties as an Uber driver in Chicago waiting to pick up passengers at the airport. Thus, Respondents did not satisfy the requirement of due process in revoking Petitioner's parole.

### III. Castanon-Nava

As discussed above, the Court concludes that it has jurisdiction over Petitioner's habeas claim regarding the lawfulness of his current detention. Further, the Court grants the petition on the merits of Petitioner's claims to the extent he seeks (1) a declaration that his re-detention violates Due Process; and (2) the revocation of his parole violates Due Process. Because that is the

appropriate habeas relief available under 28 U.S.C. § 2241, the Court finds it unnecessary to engage in extended analysis of the remaining claims in the petition at this time, including any request for relief stemming from the *Nava* Settlement.[3] See *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *3 (D. Minn. Oct. 1, 2025).

## IV.     Temporary Restraining Order

In the Petition, Petitioner seeks an order permanently enjoining his re-detention absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks. Petitioner also requests this Court grant any further relief this Court deems just and proper.

The Court below orders release and will not issue a TRO or permanent injunction specifically for those matters. However, under similar circumstances, this Court has granted temporary injunctive relief to habeas petitioners to enjoin Respondents from relocating petitioners outside the jurisdiction of this Court prior to compliance with this Order. The Courts finds that such relief is just and proper in this case.

In analyzing a request for a TRO, the Court weighs: 1) probability movant will succeed on the merits; 2) threat of irreparable harm to the movant absent injunction; 3) balance between threatened harm to the movant and harm the injunction would inflict on other interested parties; and 4) the public interest. *Dataphase Sys., Inc. v. C L Syst., Inc.*, 640 F.2d 109, 114 (8th Cir.1981)

---

[3] On October 7, 2025, the United States District Court for the Northern District of Illinois held that Immigration and Custom Enforcement's practice of issuing Form I-200 administrative warrants in the field to make arrests is unlawful, rendering all of those arrests warrantless. That Court also held that the regulation implementing DHS's arrest authority under 8 U.S.C. § 1226 require DHS to issue a Notice to Appear either before or concurrently with the Form I-200 warrant when making a warrant-based arrest. See *Nava v. Dep't of Homeland Sec.*, No. 1:18-cv-3757, 2025 WL 6324179 (N.D. Ill. Oct. 7, 2025).

(en banc). "No single factor is dispositive;" rather, the court must consider all factors to determine whether on balance they weigh towards granting the remedy. *Calvin Klein Cosmetics Corp. v. Lenox Labs.*, Inc., 815 F.2d 500, 503 (8th Cir. 1987).

The Court finds that a TRO in this case is appropriate. As discussed above, the Court has already found that movant will succeed on his Petition for Habeas Corpus by virtue of his Due Process argument. Further, the threat of irreparable harm to the movant absent injunction is high as any move from this district prior to a bond hearing would render this Order and Petitioner right to a hearing as meaningless. As to the balance between the threatened harm to the movant and the harm the injunction would inflict on other interested parties, the balance tips in favor of Petitioner. Respondents and other interested parties would not suffer by allowing Petitioner to have a hearing. Lastly, there is a public interest in allowing those who are detained in violation of the Due Process Clause to be released and given hearing as expressed and determined by Congress. For these reasons, the Court finds a TRO is appropriate.

## V.     Attorneys' Fees

Petitioner requests an award of reasonable attorneys' fees and costs. Pursuant to the EAJA, a court shall award to a prevailing party fees and other expenses incurred by that party in any civil action, brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C § 2412(d)(1)(A). To be eligible for fees under the EAJA, a petitioner must submit an application within thirty days of final judgment, and the petitioner's net worth must be less than two million dollars at the time the civil action was filed. *See id.* §§ (d)(1)(B), (d)(2)(B)(i). The EAJA was enacted with the purpose of removing the financial disincentive for individuals challenging or defending against government action and encouraging challenges to improper government action

as a means of helping formulate better public policy. *See, e.g., Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." (citation omitted)); *Boudin v. Thomas*, 732 F.2d 1107, 1114 (2d Cir. 1984) ("The EAJA was passed partly to *encourage* challenges to improper actions by government agencies. The drafters perceived legal actions as helping to formulate public policy." (citations omitted)).

As explained throughout, the Court finds the position of the United States is not substantially justified. Petitioner is not subject to automatic termination of parole without written notice under 8 C.F.R. § 212.5(e)(1). Respondents do not dispute the facts of Petitioner's status, arrest, or detainment. Yet, Respondents revoked Petitioner's parole without prior written notice. Thus, Petitioner may pursue an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act.

## CONCLUSION

The Court concludes Petitioner is not subject to automatic termination of parole without written notice under 8 C.F.R. § 212.5(e)(1), his right to procedural due process has been violated, and he is entitled to immediate release. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED** as follows.

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting parole.

2. Petitioner must be immediately released from detention and returned to a reasonable proximity of the geographical location of his residence.

3. Petitioner shall promptly report to the Court any failure to comply with this Order by Respondent.

4.  Petitioner may submit an application for fees under the EAJA within thirty days of the entry of final judgment.

5.  It is **FURTHER ORDERED** that Respondents are enjoined from relocating Petitioner outside the jurisdiction of this Court prior to compliance with this Order.

**IT IS SO ORDERED**.

DATED: January 8, 2026

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**
